IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JAVIER RESTREPO,

                Petitioner,

      v.

UNITED STATES OF AMERICA,

                Respondent.

Civil Action
No. 12-3517 (JBS)

**OPINION**

APPEARANCES:

Lee March Grayson, Esq.
55-21 69th Street
Maspeth, NY 11378
    Attorney for Plaintiff Javier Restrepo

Nelson Thayer, Jr., Assistant U.S. Attorney
United States Attorney's Office
970 Broad Street
Room 702
Newark, NJ 07102
    Attorneys for Respondent United States of America

**SIMANDLE**, Chief Judge:

**I. INTRODUCTION**

On June 12, 2012, Petitioner Javier Restrepo filed a petition for a writ of error coram nobis [Docket Item 1] to vacate his October 6, 1997 conviction for conspiracy to distribute and to possess with the intent to distribute more than five kilograms of cocaine. He claims that he received ineffective assistance of counsel because his attorney never informed him that his conviction could result in deportation. His petition

will be denied because, although he learned about potential
deportation consequences in 1998, he did not file his petition
until 2012. Coram nobis petitioners must show sound reasons for
failing to seek relief earlier; Petitioner has not done so and
his petition will be denied.

## II. BACKGROUND

This section provides an overview of Petitioner's conviction
and sentencing, the arguments in his coram nobis petition, and
Respondent's arguments in opposition.

### A. Factual Background

On October 6, 1997, Petitioner pled guilty before this Court
to conspiracy to distribute and to possess with the intent to
distribute more than five kilograms of cocaine.

The conviction occurred because Petitioner owned a tractor
trailer and, in 1996, he agreed to allow Jorge Restrepo (no
relation)[1] and a man named Pacho to outfit his trailer with a
secret compartment to hold cocaine. (Plea Tr. 27:18-25.) The
compartment could hold approximately 10 kilograms of cocaine.
(Pre-Sentencing Report ("PSR") ¶ 53.) After the compartment was
completed, Pacho loaned Petitioner $500. (Plea Tr. 28:20-24.) At
his plea hearing, Petitioner emphasized that he had "no money at

---

[1]To avoid confusion, the Court will refer to Jorge Restrepo
as "Jorge."

the time" and the $500 "was no pay for nothing, so only lent money." (Plea Tr. 28:16-19.) On January 20, 1997, Petitioner met with Jorge and Hernando Celis at a truck stop in South Kearney, New Jersey. (Plea Tr. 29:3-5.) In Petitioner's presence, Celis gave Jorge $150,000. (Plea Tr. 29:7-10.) Jorge then gave Petitioner $30,000 and asked Petitioner to deliver it to Jorge's mother. (Plea Tr. 29:14-17.)

At his plea hearing, the Court asked Petitioner, "Did you understand that the $30,000 was proceeds of the drug transaction?" (Plea Tr. 29:18-19.) Petitioner responded "[n]ot really" and said that the money "got me a surprise." (Plea Tr. 29:20-24.) Petitioner's lawyer requested a recess and spoke with his client. When Petitioner returned from the recess, he said, "Yeah, yeah, I know what the $150 so he give me the $30,000 was coming from the, the drugs." (Plea Tr. 30:5-6.)

Petitioner admitted that his actions were wrong, that he knew they were wrong at the time, and that no one forced him to participate in the conspiracy. (Plea Tr. 40:23-41:6.)

Petitioner's role in the conspiracy was minor, particularly as compared to the other defendants. He stipulated to 5 to 15 kilograms of cocaine; every other defendant stipulated to 250 kilograms or more. (PSR ¶ 53.) At the plea hearing, Petitioner said that no illegal drugs were ever actually transported in his truck. (Plea Tr. 31:13-17.) The government's allegations were

3

somewhat different, claiming that "although [he] allowed his truck to be used to transport cocaine, he did not drive the truck himself . . . (although it was mentioned that he was due to drive to Houston, TX to pick up cocaine). . . ." (PSR ¶ 53.) But the government acknowledged that Petitioner "had limited knowledge of the organization and it's [sic] activities." (PSR ¶ 53.)

Javier Restrepo not only acknowledged his guilt in entering his guilty plea, but he also accepted responsibility for his crime, as detailed in statements he made during the interview with the Probation Office, set forth in his Presentence Investigation and Report. (PSR ¶ 56.) He acknowledged that Jorge Restrepo had approached him for permission to install a secret compartment to conceal drugs that would be transported in Javier Restrepo's truck, and he agreed that the compartment could be installed and that the truck could be used to haul drugs when Javier was not using it for legitimate purposes. (Id.) Javier would allow Jorge to borrow the truck and use it to transport drugs. (Id.) Javier said he agreed to this arrangement in hopes that Jorge would eventually purchase the truck from him. (Id.) Thus, Javier Restrepo's factual guilt of the conspiracy rested upon two spheres of conduct and knowledge: he agreed to permit Jorge to install the secret compartment and use his truck to haul drugs, and he agreed to deliver $30,000, which he knew to be drug proceeds, to Jorge's mother.

4

Deportation consequences were never discussed at the plea hearing, even though Petitioner was not a United States citizen. Petitioner arrived in the United States from Colombia in 1987 and, before his conviction, he possessed a valid green card. (Restrepo Aff. ¶ 2.)[2]

On January 23, 1998, the Court sentenced Petitioner to 57 months of imprisonment followed by sixty months of supervised release and ordered him to pay a special assessment of $100. (Restrepo Aff. ¶ 1.)

At the sentencing hearing, both Petitioner's lawyer, David Secular, and the Court mentioned deportation consequences. Secular said that Petitioner "most likely will have to suffer the consequences of deportation at the end of his prison term." (Sentencing Tr. 25:21-22.) The Court told Petitioner, "I don't know whether you'll be deported or whether you'll be permitted to stay in the country. I would assume it would be deportation because this is a felony offense, but that's not a decision that is given to Judges to make. It's in the hands of the Immigration and Naturalization Service." (Sentencing Tr. 44:4-8.) In announcing the sentence and its conditions, the Court mandated that Petitioner must cooperate with the Immigration and Naturalization Service ("INS") to resolve any problems with his

---

[2]Petitioner filed an affidavit in support of his Petition. The affidavit is dated October 17, 2011, but his petition was not filed until June 12, 2012.

5

status in the United States and, if deported, must not reenter the United States without written permission from the Attorney General. (Sentencing Tr. 48:11-18.)

On February 25, 1999,[3] Petitioner filed a habeas corpus petition pursuant to 28 U.S.C. § 2255. His petition was denied because it was untimely and because his claims lacked merit. Petitioner argued, inter alia, that he received ineffective assistance of counsel because his counsel failed to "argue vigorously" for a downward adjustment of three to four levels in the sentencing guidelines. Restrepo v. United States, Civ. No. 99-924, at 10 (D.N.J. Nov. 15, 1999) (Simandle, J.). The Court held that Petitioner's attorney's advocacy "cannot plausibly be characterized as brief or lacking in vigor." Id. at 12. In addition, the Court held that, even if the attorney's performance had been deficient, Petitioner's defense was not prejudiced because he received a much lighter sentence than any other conspirator. Id. at 12. In his habeas corpus petition, Petitioner never raised his attorney's failure to advise him of deportation consequences.

**B. Petitioner's Arguments**

Petitioner argues that his conviction is invalid and should be vacated because he is facing deportation, a collateral

---

[3]The petition was dated February 25, 1999, but it was not filed until March 1, 1999. Restrepo v. United States, Civ. No. 99-924, at 3 (D.N.J. Nov. 15, 1999) (Simandle, J.).

consequence arising directly from his conviction. He argues that his attorney's failure to advise him about the deportation consequences constituted ineffective assistance of counsel.

Petitioner claims that his lawyer, David Secular, never warned him that his plea would result in deportation and that he never would have pled guilty if he had been aware of the consequences. (Id. ¶ 3.) Petitioner claims that he would have insisted upon trial because he was innocent. (Restrepo Aff. ¶ 3, 6.) He claims that Secular pressured him to plead guilty despite his innocence to get better treatment from the judge. (Restrepo Aff. ¶ 6.) Petitioner emphasized that he was innocent, that one of his co-defendants confessed that Petitioner had not been involved in the conspiracy, and that the evidence against him was weak. (Pet. at 11.) He also alleges that the government's case was based on circumstantial evidence, that his truck was searched without a warrant, and that Secular did not try to suppress the evidence.(Restrepo Aff. ¶ 6.)

According to Petitioner, Secular only advised Petitioner about the criminal process and his efforts to minimize prison time; he never discussed deportation. (Restrepo Aff. ¶ 4.) Petitioner argues that "any competent attorney would have realized that pleading to a drug trafficking offense would likely have grave immigration consequences. . . ." (Pet. at 9.) Secular had notice that Petitioner was not an American citizen because

Petitioner told Secular that he was a Colombian citizen, and Petitioner speaks with a noticeable accent and has a Latin appearance and name. (Restrepo Aff. ¶ 5.)

Petitioner argues that the consequences of deportation would be severe because he would have no employment in Colombia, he would have to leave his American wife who needs medical treatment in the United States, and guerilla groups make Colombia unsafe for him. (Restrepo Aff. ¶ 8-9.)

He argues that his petition is timely because, before the Supreme Court's decision in <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473 (2010), "there was no established state or federal law that recognized counsel's duty to discuss the immigration consequences of a plea deal and failure to meet this duty as ineffective assistance of counsel." (Pet. at 5.) In addition, before the Third Circuit's decision in <u>United States v. Orocio</u>, 645 F. 3d 630 (3d Cir. 2011), "it was unclear whether the Padilla decision had retroactive effect." (Pet. at 5-6.)

### D. Respondent's Arguments

Respondent argues that Petitioner is not entitled to coram nobis relief because (1) he fails to establish that he was prejudiced by his attorney's performance; (2) he fails to make a plausible, actual innocence claim; and (3) he cannot show any sound reasons for the unreasonable delay – over 15 years – in

challenging his guilty plea.

Respondent argues that Petitioner was not prejudiced because he cannot show that he would have pled not guilty and gone to trial. Respondent emphasizes the strength of the evidence against Petitioner, including the secret compartment in his truck and the $30,000 in drug proceeds. Respondent argues that Petitioner failed to actually claim innocence "but for scattered bald invocations of the word" and did not dispute "critical inculpatory elements," such as allowing Jorge to use his truck and install a secret compartment in it. (Resp't Answer at 14-15.)

In addition, Respondent notes that Petitioner received generous benefits in exchange for his guilty plea, including a three-level reduction in offense level, a two-level downward minor role adjustment, and use of the safety valve provision to issue a sentence below the mandatory minimum. (Resp't Answer at 13.) Petitioner must, Respondent argues, show that "in view of all the considerations . . . – the chances of prevailing at trial, given the strength of the prosecution's case and the availability of any defenses, and the relative advantages and disadvantages of a trial and a plea – going to trial would have been a rational choice." (Resp't Answer at 8.) Petitioner's "bare assertion" that he would have pled not guilty if he had been aware of the deportation consequences is "insufficient to justify a coram nobis hearing." (Resp't Answer at 8.)

Respondent also disputes Petitioner's explanation for his delay, i.e. that the Padilla decision changed the legal landscape. Respondent cites case law emphasizing that lawyers in the Third Circuit have long been expected to advise clients of deportation consequences and that unsettled law does not justify delay in filing a coram nobis petition. Even accepting Petitioner's claim that his attorney failed to inform him of deportation consequences, Respondent argues that Petitioner learned of those consequences at sentencing and should have argued ineffective assistance through a habeas petition fourteen years ago. Respondent argues that Petitioner "should not be in a more favorable position by his unjustified delay and failure to raise his claim in his § 2255 petition." (Resp't Answer at 19.) Essentially, Respondent argues that Petitioner cannot establish sound reasons for the delay.

The unreasonable delay would severely prejudice the government by forcing it to take a "wholly stale" case to trial. (Resp't Answer at 3, 19.) Respondent argues, even if witnesses can be found, their memories will have faded; the physical evidence has likely been destroyed or lost; and co-conspirators would have little incentive to testify at trial because they have already been prosecuted. (Resp't Answer at 20-21.) In addition, Respondent emphasized that the Court made Petitioner aware of the deportation consequences at the 1998 sentencing hearing and, if

he had sought relief then, his counsel "would surely have had a firmer recollection then of any advice he gave to Petitioner in 1997 and 1998 than he does now." (Resp't Answer at 6 no.1.)

**III. Analysis**

The writ of error coram nobis "is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a)." United States v. Stoneman, 870 F. 2d 102, 105 (3d Cir. 1989) (internal citation omitted). It "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer in custody. . . ." Stoneman at 105-06. The writ is available to "persons not held in custody [to] attack a conviction for fundamental defects, such as ineffective assistance of counsel." United States v. Rad-O-Lite of Philadelphia, Inc., 612 F.2d 740, 744 (3d Cir. 1979).

Coram nobis relief is "reserved for exceptional circumstances." United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988). It is "an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope." Stoneman at 106. A coram nobis petition faces stringent standards:  "The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal . . . [and] even

more stringent than that on a petitioner seeking habeas corpus relief under § 2255." Stoneman at 106.

A court may grant a coram nobis petition "to correct errors for which there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier," Stoneman, 870 F.2d at 106. A petitioner seeking coram nobis relief must therefore demonstrate three elements: "that sound reasons exist for failing to seek relief earlier, that he continues to suffer collateral consequences from his conviction (even though he is out of custody), and that an error of the most fundamental character has occurred." Gudiel-Soto v. United States, 761 F. Supp. 2d 234, 236-37 (D.N.J. 2011).

The Court will analyze each element, showing that while Petitioner has sufficiently asserted the collateral consequence and fundamental error elements, he has not shown that sound reasons exist for failing to seek relief earlier. Petitioner also cannot make an actual innocence claim that would excuse his procedural default.

### A. Deportation Is a Collateral Consequence

Deportation satisfies the collateral consequence requirement of a coram nobis petition. See United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988) ("potential deportation is a collateral consequence of a guilty plea"). Petitioner has

satisfied the first coram nobis requirement because he is subject to deportation under the Immigration and Nationality Act, which states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

**B. Ineffective Assistance of Counsel Is Fundamental Error**

Ineffective assistance of counsel constitutes fundamental error that satisfies the next requirement for coram nobis relief. Rad-O-Lite of Philadelphia at 744. The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court has established a two-part test to establish ineffective assistance of counsel: "First, the defendant must show that counsel's performance fell below an objective standard of reasonableness, and, second, the defendant must show he was actually prejudiced by counsel's deficient performance." Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) (citing Strickland). An ineffective assistance claim therefore requires a showing of both incompetent performance and prejudice.

In Padilla v. Kentucky, 130 S. Ct. 1473 (2010), the Supreme Court held that competent counsel "must inform her client whether his plea carries a risk of deportation." Padilla at 1486. An attorney's failure to inform his client about the deportation

13

consequences of a guilty plea, if proven, thus falls below the standard for competent attorney representation and satisfies the first prong of the Strickland test. Petitioner alleges that his attorney never informed him about the deportation consequences of his plea bargain and that, if he had been aware of the consequences, he never would have pled guilty. (Restrepo Aff. ¶ 3.) Deportation consequences were never discussed at the plea hearing. (Pl. Tr.)

The Third Circuit has held that Padilla applies retroactively. United States v. Orocio, 645 F. 3d 630 (3d Cir. 2011). After Orocio, it is therefore "beyond cavil that [Petitioner]'s counsel was constitutionally deficient under the first prong of the Strickland inquiry if, as is alleged, he did not advise [Petitioner] of the adverse immigration consequences of his guilty plea." Orocio at 642-643. In short, Petitioner's allegation that his counsel failed to inform him about deportation consequences satisfies the first Strickland prong such that an evidentiary hearing would be merited to determine the truth of Petitioner's allegations.

Having alleged the first Strickland prong, Petitioner must allege the second prong, i.e. prejudice. His burden is to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In

14

determining whether the outcome of the plea process would have been different, Petitioner need not show that he would have been acquitted at trial: The Third Circuit has noted that the Supreme Court "requires only that a defendant could have rationally gone to trial in the first place, and it has never required an affirmative demonstration of likely acquittal at such a trial as the sine qua non of prejudice." Orocio at 643.[4]

The burden of showing that a defendant would have chosen a trial over a plea is particularly feasible in alien cases: "Padilla reiterated that an alien defendant might rationally be more concerned with removal than with a term of imprisonment." Orocio at 643. Given Petitioner's minor role in the conspiracy and the length of time that he had been living in the United States, the Court finds that it could have been rational for him to choose trial over a plea agreement. Thus, if he was truly uninformed of the risk of deportation when making his decision to plead guilty, it is conceivable that he was prejudiced by ineffective assistance of counsel. The Court  therefore finds that Petitioner has made a prima facie showing of fundamental defect such that an evidentiary hearing would be merited to determine whether Petitioner did, in fact, suffer ineffective

---

[4]The Orocio court overruled United States v. Nino, 878 F. 2d 101 (3d Cir. 1989) and held that "Nino's requirement that a defendant affirmatively show that he would have been acquitted in order to establish prejudice . . . is no longer good law." Orocio at 644.

15

assistance of counsel. Petitioner has failed, however, to establish the third element, which requires sound reasons for failing to seek relief earlier, as next discussed.

### C. Petitioner Failed to Seek Relief Earlier

Assuming the truth of Petitioner's allegation that his counsel failed to inform him about deportation consequences before he pled guilty, Petitioner learned about those consequences, at the latest, at his sentencing hearing on January 23, 1998. His counsel said at the hearing that Petitioner "most likely will have to suffer the consequences of deportation at the end of his prison term." (Sentencing Tr. 25:21-22.) The Court told Petitioner, "I don't know whether you'll be deported or whether you'll be permitted to stay in the country. I would assume it would be deportation because this is a felony offense. . . ." (Sentencing Tr. 44:4-8.)

In <u>Mendoza v. United States</u>, 390 F. 3d 157 (3d Cir. 2012),[5] the Third Circuit held that references to deportation in a pre-sentencing report constitute sufficient notice for purposes of considering unreasonable delay in filing a coram nobis petition. In this case, the notice to Petitioner Restrepo was even stronger than in <u>Mendoza</u>. Here, both Petitioner's attorney and the Court referenced deportation at the sentencing hearing during the

---

[5] <u>Mendoza</u> was published on August 1, 2012, almost two months after Petitioner filed his petition on June 12, 2012.

presentence colloquy. Petitioner was certainly present at the sentencing hearing and had the assistance of an interpreter. (Sentencing Tr. 1:13-16.) If a pre-sentencing report constitutes sufficient notice in Mendoza, then the direct statements to Petitioner at Petitioner's sentencing hearing surely constitute sufficient notice for coram nobis purposes.

To be clear, the Court does not contend that these sentencing hearing statements cured Petitioner's counsel's allegedly deficient performance, if any. The Orocio court emphasized that allusions to immigration authorities at sentencing and plea hearings were "insufficient to mitigate the prejudice suffered. . . ." and that the question under Strickland and Hill is not whether Orocio had later access to remedies, but whether he would have pled guilty at all. Orocio at 646. In this case, the Court has already found that Petitioner Restrepo made a prima facie showing of fundamental error due to ineffective assistance of counsel. If that were the only requirement, the Court would order an evidentiary hearing. But a coram nobis petition must satisfy all three elements: collateral consequences, fundamental error, and sound reasons for failing to seek relief earlier. The Orocio court's analysis was limited to determining whether Padilla applied retroactively and whether a prejudice inquiry most show that the defendant would have been acquitted at trial. It did not address the coram nobis elements,

including the requirement that there must be sound reasons for failing to seek relief earlier. The Orocio court stated that "[b]ecause the District Court did not address the requirements for coram nobis relief other than the fundamental defect of Strickland error, we leave such issues to be addressed in the first instance on remand." Orocio at 635 n.4. The issue before the Court is not whether statements at the sentencing hearing cured Petitioner's counsel's allegedly deficient performance; the issue is whether Petitioner can justify the 14.5-year delay after he learned about deportation consequences before he challenged his guilty plea.

The Third Circuit analyzed unjustifiable delay in Mendoza. In that case, petitioner Mendoza pled guilty in March 2006 to an aggravated felony. His counsel failed to advise him that deportation would result, but the pre-sentencing report notified him about deportation consequences. In 2010, Mendoza filed a habeas petition alleging that his counsel was ineffective. And, in 2011, he filed a coram nobis petition. The Mendoza court held:

> Although Mendoza's counsel's deficient performance may have precluded him from seeking relief at the time of his plea, Mendoza cannot show any "sound reasons" for his lengthy delay in seeking relief since that time. Mendoza became aware of his plea's deportation consequences in September 2006 via his PSR, yet did not allege until 2010 that his counsel was ineffective.

Mendoza at 159-60. The Mendoza court held that "the government would certainly be unduly prejudiced by the re-prosecution of a

18

case involving facts nearly a decade dormant" and that petitioner Mendoza's "delay in pursuing relief was unreasonable and bars his petition." Mendoza at 161. Mendoza's four-year filing delay was fatal; in this case, Petitioner's delay was 14.5 years.

In Mendoza, the petitioner argued that he did not file sooner because, before Padilla, there was no Supreme Court precedent regarding a counsel's duty to warn of a plea's immigration consequences. The Mendoza court held that reason was not sound because "Padilla did not create a 'new rule' for retroactivity purposes precisely because lawyers in the Third Circuit have long been expected to advise clients of a plea's deportation implications." Mendoza at 160. Even if Padilla had clarified an uncertain legal landscape, the Third Circuit stated "[t]hat the law is unsettled does not justify a delay in filing a coram nobis petition." Mendoza at 160 (citing Bousley v. United States, 523 U.S. 614, 623 (1998) ("futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.")).

Petitioner Restrepo makes similar arguments about timeliness. He argues that his petition is timely because, before Padilla, "there was no established state or federal law that recognized counsel's duty to discuss the immigration consequences of a plea deal and failure to meet this duty as ineffective assistance of counsel." (Pet. at 5.) In addition, Petitioner

19

argues that before Orocio, "it was unclear whether the Padilla decision had retroactive effect." (Pet. at 5-6.)

These arguments fail. In Mendoza, the Third Circuit clearly held that citing Padilla as the cause for delay in filing is not a sound reason because Padilla did not create a new rule. Mendoza at 160. In addition, the Mendoza court distinguished Orocio because "Orocio filed his petition alleging deficient performance *before* the Supreme Court decided Padilla, based on existing precedent, and did so immediately upon learning of his impending deportation." Mendoza at 160 (emphasis in original). The Third Circuit has therefore established that Padilla does not excuse delay in filing.

Petitioner Restrepo also argues that Orocio changed the legal landscape by making Padilla retroactive. This argument is suspect. The Orocio court held that Padilla applied retroactively precisely because it did not establish a new standard: "We are convinced that Padilla did not break new ground in holding that counsel must inform a criminal defendant of the immigration consequences of a guilty plea in order to be constitutionally adequate." Orocio at 638. If the standard for attorney conduct already existed, then Petitioner Restrepo cannot excuse his failure to file earlier. Even if, arguendo, the law was unclear before Orocio, the Mendoza court held that unsettled law does not excuse delay: "That the law is unsettled does not justify a delay

20

in filing a coram nobis petition." <u>Mendoza</u> at 160. Neither
<u>Padilla</u> nor allegedly unsettled law justifies Petitioner's delay.
Because Petitioner lacks sound reasons for failing to file
earlier, his petition will be denied.

### D. Petitioner Cannot Claim Actual Innocence

Petitioner's delay precludes relief. But habeas
jurisprudence allows actual innocence to trump procedural
defaults: "in an extraordinary case, where a constitutional
violation has probably resulted in the conviction of one who is
actually innocent, a federal habeas court may grant the writ even
in the absence of a showing of cause for the procedural default."
<u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). Although this is not
a habeas case, innocence analysis is warranted because Petitioner
has claimed that he is actually innocent and because, if
Petitioner were actually innocent, it would be an extraordinary
case that could negate his procedural default.

Petitioner has asserted his innocence in general terms. He
stated that he "was in fact innocent," (Restrepo Aff. ¶ 3) and
that his attorney "pressured me to plead guilty despite my
innocence," (Restrepo Aff. ¶ 6). He argues that the case against
him "was based only on circumstantial evidence" and that the
"evidence should have been suppressed." (Restrepo Aff. ¶ 6.) He
emphasized that he never actually transported drugs, that his
voice was not on any tape-recorded conversations that the

government used to establish a conspiracy, and that there was "no other evidence tying him to the conspiracy, other than an agreement to use his truck." (Pet. at 11.) Petitioner does admit he "allowed his truck to be used by codefendant Jorge Restrepo . . . and allowed Jorge to install a secret compartment in the passenger area of the truck." (Pet. at 3.)

Petitioner's innocence claim lacks merit. His admission that he allowed Jorge to use his truck and install a secret compartment for drug transport defeats his innocence claim, as does his acknowledgment that he agreed to transport $30,000 in known drug proceeds. It is clear that Petitioner's role in the conspiracy was minor, but it is also clear that he had a role in the conspiracy in which, at minimum, he permitted the construction of a secret compartment in and use of his truck. Claiming a minor role is not the equivalent of making a genuine innocence claim. He was a member, whether minor or not, who was aware of the purpose of the conspiracy, which was to use his truck for the distribution of cocaine.

Murray references the "extraordinary case" where a constitutional violation has resulted in the conviction of an "actually innocent" person. Petitioner is not actually innocent. He admitted his guilt in his Rule 11 hearing, in his statements to the Probation Office set forth in his PSR, and in his debriefing for purposes of the safety valve under 18 U.S.C. §

22

3553(f) & U.S.S.G. § 5C1.2, which he earned by describing his role and that of others in the conspiracy offense. Restrepo's petition is untimely, and that defect is fatal. He has not overcome this procedural default with an actual innocence showing.

**E. The Pending Supreme Court Case Has No Impact**

There is presently a pending Supreme Court case regarding whether Padilla applies retroactively, but the outcome of that case will not impact Petitioner's case. The question of Padilla's retroactive applicability has split the Circuits. Compare Orocio (holding that Padilla is retroactive), with Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011) (holding that Padilla is not retroactive) and United States v. Chang Hong, 671 F.3d 1147 (10th Cir.2011) (same). The Supreme Court has granted certiorari to answer the question of whether Padilla applies to persons whose convictions became final before its announcement. Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011), cert. granted 132 S. Ct. 2101 (U.S. Apr. 30, 2012) (No. 11-820). The resolution of this question

> has no bearing on [Petitioner]'s claim, which falls short regardless. If the Supreme Court were to . . . conclude that Padilla did, in fact, create a new rule, such a ruling may strengthen [Petitioner]'s argument that he was previously unaware of the rule, but would also preclude him from invoking Padilla retroactively, effectively foreclosing his claim.

Mendoza v. United States, 690 F.3d 157, 160 no.1 (3d Cir. 2012).

23

Essentially, Restrepo's petition fails, regardless of the Supreme Court's ruling on Padilla's retroactive application. If the Supreme Court finds that Padilla is not retroactive, then Petitioner cannot claim the rule applies to him. If the Supreme Court affirms Orocio and finds that Padilla announced a pre-existing rule, then Petitioner cannot justify his 14.5-year delay in filing his petition. The Orocio court held that "[w]e are convinced that Padilla did not break new ground in holding that counsel must inform a criminal defendant of the immigration consequences of a guilty plea in order to be constitutionally adequate." Orocio at 638. If Padilla did not break new ground, then, as explained above, Petitioner's delay is fatal to his position. Essentially, the pending Chaidez case will not negate this case's outcome.

## III. Conclusion

Restrepo's coram nobis petition is denied because he has not alleged sound reasons for his failure to file earlier. The Court has not included a certificate of appealability because "[n]either the statute making the writ of error coram nobis available in federal courts in criminal matters, . . . nor any Federal Rule of Appellate Procedure requires a certificate of appealability before an appeal may be taken, nor does such a

requirement appear in the case law." <u>United States v. Baptiste</u>, 223 F.3d 188, 189 (3d Cir. 2000).


**November 8, 2012**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge